1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ERIC WICK,                              No.  2:09-cv-1027-GEB-EFB P

12                    Plaintiff,

13          v.                                ORDER AND
                                              FINDINGS AND RECOMMENDATIONS
14   ANGLEA, et al.,

15                    Defendants.

16

17          Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

18   U.S.C. § 1983.  He proceeds against defendants Anglea, Monroe, Mejia, and Grannis on claims

19   arising out of plaintiff's transfer from the California Correctional Center (CCC) in Susanville,

20   California, to California State Prison-Solano (CSP-Solano) in Vacaville, California.  Plaintiff

21   claims that defendants retaliated against him in violation of the First Amendment.  Defendants

22   move for summary judgment.  ECF No. 88.  Plaintiff opposes the motion and also seeks sanctions

23   against defendants.  ECF No. 91.  For the reasons provided below, defendants' motion must be

24   granted as to defendants Mejia, Monroe, and Grannis, but denied as to defendant Anglea.  In

25   addition, plaintiff's motion for sanctions is denied.

26   **I.    Background**

27          This action proceeds on plaintiff's second amended and verified complaint.  ECF No. 67

28   ("Compl.").  Plaintiff alleges that his name was placed on a retaliatory "hit list" of inmates to be

1  transferred out of CCC for filing administrative appeals or for otherwise engaging in conduct

2  protected under the First Amendment.  *Id.* ¶¶ 19, 45.  Plaintiff claims that the decision to transfer

3  him was made by the classification committee.  *Id.* ¶ 21.  That committee allegedly included

4  defendants Anglea and Monroe.  *Id.* ¶ 22.  Plaintiff alleges that Anglea was the sole decision-

5  maker of the committee, but that Monroe facilitated the transfer by making false statements in a

6  form 128-G, or chrono, that Monroe improperly prepared in advance of the committee's meeting

7  on September 11, 2007.  *Id.* ¶¶ 22, 24.  In addition, plaintiff claims that defendant Mejia endorsed

8  the false 128-G in order to ensure that the retaliatory transfer was successful.  *Id.* ¶¶ 25, 28.  As a

9  result, plaintiff claims he was transferred to CSP-Solano.  *Id.* ¶ 32.  He also claims that defendant

10  Grannis thwarted the administrative appeals process to prevent plaintiff from being transferred

11  back to CCC from CSP-Solano.  *Id.* ¶¶ 34, 47, 54.  Plaintiff claims that defendants' conduct

12  amounted to retaliation in violation of the First Amendment.  *See id.*, Count I.

13  **II.    Summary Judgment Standard**

14          Summary judgment is appropriate when there is "no genuine dispute as to any material

15  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

16  judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

17  to the determination of the issues in the case, or in which there is insufficient evidence for a jury

18  to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

19  (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

20  *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

21  motion asks whether the evidence presents a sufficient disagreement to require submission to a

22  jury.

23          The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

24  or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

25  "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

26  trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

27  (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

28  under summary judgment practice, the moving party bears the initial responsibility of presenting

2

1   the basis for its motion and identifying those portions of the record, together with affidavits, if

2   any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

3   U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

4   party meets its burden with a properly supported motion, the burden then shifts to the opposing

5   party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

6   *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

7         A clear focus on where the burden of proof lies as to the factual issue in question is crucial

8   to summary judgment procedures.  Depending on which party bears that burden, the party seeking

9   summary judgment does not necessarily need to submit any evidence of its own.  When the

10  opposing party would have the burden of proof on a dispositive issue at trial, the moving party

11  need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

12  *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

13  which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

14  24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

15  summary judgment motion may properly be made in reliance solely on the 'pleadings,

16  depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

17  should be entered, after adequate time for discovery and upon motion, against a party who fails to

18  make a showing sufficient to establish the existence of an element essential to that party's case,

19  and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

20  circumstance, summary judgment must be granted, "so long as whatever is before the district

21  court demonstrates that the standard for entry of summary judgment . . . is satisfied."  *Id.* at 323.

22        To defeat summary judgment the opposing party must establish a genuine dispute as to a

23  material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

24  is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at

25  248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

26  will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is

27  determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party

28  is unable to produce evidence sufficient to establish a required element of its claim that party fails

in opposing summary judgment.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

/////

4

1    Defendants' motion for summary judgment included a notice to plaintiff informing him of

2    the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil

3    Procedure.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952,

4    957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849

5    F.2d 409 (9th Cir. 1988).

6    **III.    Discussion**

7        To state a viable First Amendment retaliation claim, a prisoner must allege five elements:

8    "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3)

9    that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

10   Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

11   *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  To raise a genuine issue of material

12   fact as to whether a defendant took an adverse action because of a plaintiff's protected conduct, a

13   plaintiff must produce evidence that the defendant knew of the plaintiff's protected conduct and

14   either (1) the protected conduct and adverse action were close in time, (2) the defendant

15   expressed opposition to the protected conduct, or (3) the defendant's proffered reason for the

16   adverse act was false or pretextual.  *See Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009).

17   **1.    Defendant Anglea**

18       Defendant Anglea was a Facility Captain and chaired the Unit Classification Committee

19   (UCC) at CCC that referred plaintiff for transfer to CSP-Solano on September 11, 2007.  ECF No.

20   88-5, Ex. C, Anglea's Responses to Plaintiff's Interrogatories ("Anglea Rogs.") at 2; ECF No. 88-

21   4 at 2 (Sept. 11, 2007 Classification Chrono).  Anglea explains that there was a directive from

22   headquarters to deactivate the Level III housing in the CCC gym, which required that 100-120

23   inmates be transferred out of CCC.  Anglea Rogs. at 3.  Anglea claims to have recommended that

24   plaintiff be transferred because plaintiff met the transfer criteria in that he was not eligible for

25   "camp placement" and was "not close custody," and because of concerns that plaintiff was

26   overfamiliar with staff, having been in his job assignment in the cabinetmaking shop for

27   approximately six years.  Anglea Rogs. at 3; ECF No. 88-5, Ex. A ("Pl.'s Dep.") at 41:14-20.

28   Anglea argues there were legitimate correctional goals for plaintiff's transfer to CSP-Solano,

5

1    because he believed it was in the interest of the safety and security of the institution for plaintiff

2    to be transferred, and because plaintiff met the transfer criteria under the directive from

3    headquarters.  Anglea contends that plaintiff has no evidence to support his allegation that he was

4    transferred because of conduct protected under the First Amendment.

5         In opposition, plaintiff produces evidence creating a genuine dispute as to whether Anglea

6    knew of plaintiff's protected conduct.  First, plaintiff produces evidence that he was engaged in

7    protected conduct in 2006 and 2007, through his attempted use of the administrative appeals

8    process and by filing cases in state and federal court.  *See* Compl. ¶¶ 16-18; ECF No. 91 at 20

9    ¶¶ 1-2.  In addition, plaintiff produces a declaration from an inmate who participated in a meeting

10   with Anglea in September 2007, before the inmate transfers took place.  According to that

11   inmate's declaration, he asked Anglea whether inmates were being placed on a "hit list" or a "shit

12   list" to be transferred because of their litigation activities.  ECF No. 55, Ex. E, Day Declaration

13   ¶ 3.  The declaration states that Anglea "admitted that there was in fact a 'shit list,' and he

14   intended to 'Flush the tiolet [sic],' and mentioned he had included at least 15 inmates on the list."

15   *Id.* ¶ 4.  Presumably, Angela disputes the allegation but defendants' motion simply does not

16   address it.  Nonetheless, assuming that Anglea would testify that he never made those statements,

17   the credibility determination of which witness to believe cannot be made on summary judgment.

18   If at trial a jury credits this inmate's recollection of Anglea's admissions, the jury could

19   reasonably conclude that not only was Anglea aware that plaintiff had engaged in litigation

20   activities, but that Anglea was motivated to transfer plaintiff because of those activities.

21        Plaintiff also shows that his litigation activities and Anglea's decision to transfer him were

22   close in time.  Plaintiff points out that within two weeks of the U.S. Court of Appeals for the

23   Ninth Circuit order for briefing from the state in his civil action against the warden of CCC,

24   Anglea made the decision to transfer plaintiff.  *See* ECF No. 55, Ex. D, Aug. 30, 2007 Order from

25   Court of Appeals.

26        Further, plaintiff produces evidence showing that Anglea's proffered reasons for

27   plaintiff's transfer have morphed over time.  He points out that the CDC 128-G, issued on

28   September 11, 2007, is silent as to plaintiff's alleged "overfamiliarity" with staff or any concerns

6

1   regarding the safety and security of the institution.  *See* ECF No. 88-4 at 2 (CDC 128-G, noting

2   only that plaintiff's transfer was prompted by the deactivation of the gym and that plaintiff met

3   the "transfer criteria").  Plaintiff suggests that Anglea's present concerns regarding "safety" and

4   plaintiff's alleged overfamiliarity with staff are merely after-the-fact explanations for an

5   admittedly retaliatory transfer.  Plaintiff notes that these reasons were not raised by Anglea until

6   May 2013, over five years after the transfer took place.  *See* Anglea Rogs. at 3.

7           Viewing the evidence in the light most favorable to plaintiff, it is sufficient to raise

8   genuine disputes as to whether Anglea actually transferred plaintiff because he engaged in

9   conduct protected under the First Amendment, and not because of a legitimate penological

10  reason. While a jury might reasonably reject plaintiff's version of what occurred, the credibility

11  assessment is for the jury to resolve at trial.

12          Anglea contends he should be granted qualified immunity because he believed that

13  plaintiff should be transferred in the interest of the safety and security of the institution.  ECF No.

14  88-2 at 8.  As discussed above, however, this is a disputed factual issue regarding the alleged

15  constitutional violation.  Because the issue of qualified immunity is intertwined with the disputed

16  issues of material fact, Anglea cannot be granted summary judgment.

17      **2.  Defendant Monroe**

18          Defendant Monroe, a Correctional Counselor, claims to have also recommended that

19  plaintiff be transferred because he met the transfer criteria.  ECF No. 88-5, Ex C, Monroe's

20  Responses to Plaintiff's Interrogatories ("Monroe Rogs.") at 2.  Plaintiff alleges that Monroe

21  facilitated the "retaliatory transfer" by drafting a "false chrono" in advance of the committee's

22  September 11, 2007 meeting, in violation of prison regulations.  Compl. ¶¶ 21-22, 24, Ex. H.

23          Monroe explains that the purportedly "false chrono" was just a draft that she prepared

24  prior to the meeting.  ECF No. 91, Monroe's Responses to Plaintiff's Requests for Admissions at

25  3.  She explains that she revised the draft based on actions taken at the committee meeting, and

26  notes that her initial draft was never signed and was not the final document that was placed in

27  plaintiff's central file.  *Id.*; *see also* Pl.'s Dep. at 82:13-16 (admitting that only the signed chrono

28  is in his central file).  Comparison of the initial draft and the revised draft shows that Monroe

1    revised the draft to reflect that plaintiff "was not at all in agreement with [the] committee's

2    decision," and that he was "an active participant" at the hearing.  *Compare* ECF No. 67, Ex. H

3    *with* ECF No. 88-4 at 2.

4         In response, plaintiff argues that Monroe only corrected the chrono after his family had

5    complained and the state Attorney General's Office had requested documents in order to respond

6    to a motion plaintiff had filed to prevent the transfer.  ECF No. 91 at 4-5; *see also* ECF No. 55,

7    Ex. O (Sept. 13, 2007 letter from plaintiff's parents to CCC Warden); ECF No. 91, Ex. TT

8    (plaintiff's Sept 17, 2007 petition for emergency injunctive relief).  He claims further, that the

9    revised chrono still has two inaccurate statements in it: 1) that the transfer was based on

10   deactivation of the gym, and 2) that he stated that his father was dying of colon cancer.  Pl.'s Dep.

11   at 80:9-14.  Otherwise, plaintiff concedes that the final chrono is accurate.  *Id.* at 95:4-8.  Plaintiff

12   argues that regardless of whether Monroe "had any personal motive to retaliate against [him], she

13   unequivocally acted in collusion with those who *did*."  ECF No. 91 at 5.

14        Plaintiff fails to demonstrate any triable issue of fact as to whether Monroe retaliated

15   against him.  First, there is nothing to indicate that Monroe prepared the draft chrono for any

16   improper purpose.  Nor is there any evidence that she recommended him for transfer because of

17   any protected conduct.  In addition, the fact that the chrono contains several inaccuracies or that it

18   was revised following the committee meeting does not suggest retaliation.  Accordingly,

19   plaintiff's retaliation claim fails and Monroe should be granted summary judgment.

20   **3.  Defendant Mejia**

21        Defendant Mejia was a Classification Staff Representative from headquarters in

22   Sacramento who came to CCC to review the committee's recommendation to see if it was

23   consistent with departmental policy.  ECF No. 88-5, Ex. C, Mejia's Responses to Plaintiff's

24   Interrogatories at 2.  On September 19, 2007, Mejia endorsed plaintiff's transfer out of CCC.

25   ECF No. 88-4 at 3.  To demonstrate the existence of a genuine dispute for trial on his claim

26   against Mejia, plaintiff advances several arguments, none of which have merit.

27        Plaintiff claims that Mejia's endorsement of his transfer "omitted critical case factors

28   mandated by regulations, and left the endorsement illegally open-ended."  ECF No. 91 at 5.

1    Evidence that Mejia's endorsement violated CDCR regulations, however, does not create a

2    genuine dispute as to whether Mejia's endorsement was retaliatory.

3            Next, plaintiff contends that Mejia spoke to Anglea about the transfer.  *Id.*  In support of

4    this contention, plaintiff refers to Anglea's response to Interrogatory No. 5, which states that he

5    spoke with the "Classification and Parole Representative" about plaintiff's transfer.  *See id.* at 36.

6    Mejia, however, was a Classification Staff Representative from Sacramento, not a Classification

7    and Parole Representative, who would have been based at CCC.  *See* Cal. Code Regs. tit. 15,

8    § 3000 ("Classification and Parole Representative (C&PR) means the department employee

9    designated at each institution to be that institution's liaison with releasing boards and parole

10   staff.").  Thus, there is no evidence that Anglea and Mejia ever spoke about plaintiff's transfer.

11           Lastly, plaintiff contends that the day before Mejia endorsed his transfer, Anglea told a

12   CDCR psychologist that plaintiff's transfer was a "done deal."  ECF No. 91 at 5 and 17.  Plaintiff

13   argues that the only way Anglea could have viewed his transfer as a "done deal" is if he had acted

14   in "collusion" with Mejia.  *Id.*  Plaintiff's assumption as to what must have transpired to allow

15   Anglea to declare plaintiff's transfer a "done deal" is not supported by the record, and is

16   speculative.  Assuming Anglea made the alleged statement to the psychologist, it hardly

17   constitutes evidence upon which a jury could reasonably conclude that Mejia colluded with

18   Anglea to retaliate against plaintiff for having exercised his First Amendment rights.

19           For these reasons, plaintiff fails to identify any genuine dispute as to whether Mejia

20   endorsed plaintiff's transfer because of plaintiff's protected First Amendment conduct.

21   Therefore, summary judgment must be granted in favor of Mejia.

22        **4.  Defendant Grannis**

23           Grannis was the Chief of the Inmate Appeals Branch, which meant she reviewed appeals

24   at the third level from inmates state-wide.  ECF No. 88-5, Grannis's Responses to Plaintiff's

25   Interrogatories ("Grannis Rogs.") at 1-2.  Following his transfer to CSP-Solano from CCC,

26   plaintiff filed administrative appeals requesting that he be transferred back to CCC.  ECF No. 67,

27   Ex. U at 104-107.  Plaintiff's requests to be returned to CCC were denied at the first and second

28   levels of review.  *Id.* at 114-117.  On August 15, 2008, Grannis denied plaintiff's appeal at the

1   third level of review.  *Id.* a 118-119; Pl.'s Dep. at 102:6-13, 17-19.  Grannis provided the

2   following explanation for her denial:

3
        The documentation and arguments presented are persuasive that the appellant has
4       failed to support his appeal issue with sufficient evidence or facts to warrant a
        modification in the [Second Level Review].  There is no evidence that supports the
5       appellant's contention that his request to be transferred back to CCC was
        inappropriately denied.  The reviewer affirmed that at the appellant's most recent
6       classification appearance he requested that he be returned to CCC.  Upon
        [Classification Staff Representative] review, the appellant was endorsed for
7       retention at [CSP-Solano] as he was appropriately endorsed.  In addition, during
        the [First Level Review], staff contacted [Correctional Counselor II] Riley at CCC
8       regarding the circumstances of events surround[ing] the appellant's transfer from
        CCC to [CSP-Solano].  The reviewer determined that CCC was tasked with a
9       mission change, and was provide[d] criteria to identify a specific group of inmates
        that could be transferred to [CSP-Solano].  The appellant was one of the inmates
10      who counseling staff identified as meeting the criteria established by the
        [Classification Service Unit] for transfer to [CSP-Solano].  The examiner finds that
11      the appellant's transfer from CCC to [CSP-Solano], as well as his retention at
12      [CSP-Solano] is appropriate.  The examiner concurs with the [Second Level
        Review] decision.
13

14

15   ECF No. 67 at 118-119.

16          Plaintiff argues that Grannis had a motive to retaliate against him because he had

17   previously named her in an action he was litigating, and she had filed declarations in that action.

18   ECF No. 91 at 20 ¶¶ 1-2, 18 ¶ 30; Grannis Rogs. at 3.  He contends that his legal activities

19   "threatened to expose her perjury and thwarting of the administrative remedy process."  *Id.* at 18

20   ¶ 32.  According to plaintiff, "there is no rational explanation for her actions *but* retaliation."

21   ECF No. 91 at 6.  However, plaintiff concedes that responding to his appeal was within Grannis's

22   job duties, and that it was her only involvement in his transfer.  Pl.'s Dep. at 102:14-16; Grannis

23   Rogs. at 1-2.  And, as demonstrated by Grannis's denial of plaintiff's appeal, she offered a

24   number of reasons for denying the appeal, including her reliance on the representation by the

25   Classification Staff Representative that plaintiff was appropriately housed at CSP-Solano, and

26   Grannis's own determination that it was appropriate to have transferred plaintiff from CCC

27   because he had been identified as an inmate who met the transfer criteria.  While plaintiff has cast

28   doubt as to whether defendant Anglea's reasons for transferring him were pretextual, he has not

accomplished the same with respect to Grannis's reasons for denying his appeal. There is no evidence that Grannis knew or even suspected that Anglea had transferred plaintiff for an improper reason. Rather, Grannis has shown that her denial of plaintiff's appeal was based on legitimate correctional concerns. Plaintiff has not refuted this evidence or otherwise shown it to be pretextual. Accordingly, summary judgment must also be granted in favor of Grannis.

## IV.    Plaintiff's Motion for Sanctions

Plaintiff seeks sanctions against defendants for their alleged failure to comply with the court's August 16, 2013 order granting in part plaintiff's motion to compel. ECF No. 91. Of relevance is the court's order as it pertains to plaintiff's requests for an Office of Internal Affairs (OIA) Report, "128-Gs," and for the minutes from a Men's Advisory Council (MAC) meeting.

In the motion to compel, plaintiff argued that the requested OIA report, drafted in or around 2001, was in the defendants' possession, custody, or control because a rules violation report issued against him reflected that a copy of the report had been given to CCC prison officials. The court ordered defendants to either produce the OIA report, or explain why they had not. Defendants, pointing to the declaration of the CCC Litigation Coordinator, explained that they could not produce the report. ECF No. 90. The Litigation Coordinator's declaration indicates that the report cannot be found at CCC because the archives of the Investigative Services Unit (ISU) only go back as far as 2004, and ISU confirmed that they do not have the requested report. ECF No. 90, Hackler Decl. ¶¶ 11-12. Nor can the report be found in plaintiff's central file. *Id.* ¶ 10. Plaintiff argues that this response is inadequate and warrants sanctions. Plaintiff insists that defendants should have requested the report from the CCC Warden, the Secretary of Corrections, or the Governor's Office. *See* ECF No. 91 at 26.

The request for sanctions is denied. Plaintiff fails to set forth any basis for believing that the OIA report, which plaintiff described as being attached to his rules violation report, would be in the possession of the Warden, the Secretary of Corrections, or the Governor's Office.

/////

/////

/////

11

1    Defendants made reasonable efforts to locate the requested document where it was most likely to

2    be located -- in plaintiff's central file and in the ISU.   Defendants have demonstrated, as

3    instructed, that they have searched for the document but could not locate it.  This conduct is not

4    deserving of sanctions.

5           Plaintiff also argued in his motion to compel that defendants had not responded to his

6    request for "128-Gs."  The court ordered defendants to either produce the requested documents,

7    or explain why they had not.  Defendants responded by explaining that the 128-Gs had not been

8    produced because the 128-Gs could only be located through first reviewing the Classification

9    Staff Representative action sheets from 2007.  ECF No. 90 at 1-2.  The court previously accepted

10   defendants' representations that the action sheets are no longer in existence because of CCC's

11   one-year document retention policy.  ECF No. 87 at 2.  In the motion for sanctions, plaintiff seeks

12   to re-litigate the issue of whether the action sheets still exist.  *See* ECF No. 91 at 26 (arguing that

13   defendants should look for the action sheets at Classification Services Unit in Sacramento).  The

14   court has already addressed the issue and plaintiff's attempt to re-litigate this issue through his

15   motion for sanctions is improper.

16          Lastly, plaintiff argued in his motion to compel that defendants had failed to produce

17   minutes from the September 6, 2007 MAC meeting.  Defendants had represented that the

18   documents did not exist because of a two-year retention policy, but plaintiff presented

19   information suggesting that the minutes may nevertheless still exist.  Accordingly, the court

20   directed defendants to conduct a reasonable search for the documents and either produce them, or

21   verify that after having conducted a search, the documents could not be located.  Defendants'

22   response explains that the CCC Litigation Coordinator contacted the Office Technician on Lassen

23   Yard and asked her to look for the minutes.  ECF No. 91, Hackler Decl. ¶ 9.  The Office

24   Technician then asked the Lieutenant and Associate Warden on Lassen Yard where to look for

25   the minutes from the September 6, 2007 MAC meeting and where any copies might be kept.  *Id.*

26   Apparently, she then searched the Facility C (Lassen Yard) Chapel office, but was not able to

27   locate any minutes older than January 22, 2008.  *Id.*  On this basis, defendants represent that there

28   are no documents that can be produced to plaintiff in response to his request.  Plaintiff, who

1  concedes that defendants looked for the documents "in the right place," suggests that defendants'

2  failure to produce the minutes is just further retaliation.  ECF No. 91 at 27.

3       The court finds defendants' response regarding their efforts to locate the MAC minutes to

4  be satisfactory.  Plaintiff's belief that defendants are withholding the minutes as a means of

5  retaliation is not supported by the record and is not a sufficient basis for the imposition of

6  sanctions.

7  **V.   Order and Recommendation**

8       For the reasons stated above, IT IS HEREBY ORDERED that plaintiff's motion for

9  sanctions (ECF No. 91) is denied.

10       Further, IT IS HEREBY RECOMMENDED that defendants' motion for summary

11  judgment (ECF No. 88) be granted in favor of defendants Monroe, Mejia, and Grannis, and

12  denied as to defendant Anglea.

13       These findings and recommendations are submitted to the United States District Judge

14  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

15  after being served with these findings and recommendations, any party may file written

16  objections with the court and serve a copy on all parties.  Such a document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

18  objections shall be served and filed within fourteen days after service of the objections.  The

19  parties are advised that failure to file objections within the specified time may waive the right to

20  appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez*

21  *v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

22  DATED:  February 11, 2014.

23                     EDMUND F. BRENNAN

24                     UNITED STATES MAGISTRATE JUDGE

25

26

27

28